| | AUSA: | Philip A. Ross | Telephone: | (313) 226-9790 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | David Holliday | Telephone: | (313) 965-4967 |

# UNITED STATES DISTRICT COURT
for the

## Eastern District of Michigan

United States of America
  v.

Jacob Wise

Case No. 25-30750

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____Feburary 2024 through June 2025____ in the county of ____Wayne____ in the ____Eastern____ District of ____Michigan____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |
| 18 U.S.C. § 1957 | Money laundering |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

David Holliday, Special Agent (FBI)
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:  ____December 10, 2025____

_____
Judge's signature

City and state:  _Detroit, Michigan_

Hon. Anthony P. Patti, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, David Holliday, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a criminal complaint

charging the above individual with wire fraud in violation of 18 U.S.C. § 1343 and

money laundering in violation of 18 U.S.C. § 1957.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI), have

been employed with the FBI since 2023, and I am assigned to the Detroit Field

Office's Fraud and Illicit Finance (commonly referred to as white collar crime)

squad. Within the Fraud and Illicit Finance squad, investigations include

conspiracies, money laundering, wire and mail fraud, bank fraud, identity theft,

and various other criminal matters. At all times during the investigation described

in this affidavit, I have been acting in an official capacity as a Special Agent of the

FBI.

3.      During my training at the FBI Academy in Quantico, Virginia, I received

training in a variety of investigative and legal matters, including the drafting of

affidavits and probable cause. I currently hold an active Certified Public

Accountant (CPA) license and have a Master's degree in business. Prior to entering

1

the FBI, I worked for approximately 15 years in various financial and accounting roles.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter. The information contained in this affidavit is based upon my personal knowledge and observations, training, and experience, as well as the combined knowledge, training, and experience of other Special Agents of both the FBI and Internal Revenue Service, law enforcement officers, and other reliable sources.

5.      All events referenced in this affidavit are alleged to have occurred on or about the date specified.

## EXECUTIVE SUMMARY

6.      JACOB WISE was employed as the Financial Controller for Detroit business, International Hardcoat, LLC (IHC), from approximately February 2024 until June 2025. IHC terminated WISE's employment after it was discovered WISE embezzled IHC funds. IHC later discovered WISE registered a business, opened a JPMorgan Chase (JPMC) bank account, and used the account to divert IHC funds. Through further investigation, law enforcement discovered WISE registered an additional business, Apex Capital Holdings LLC (Apex), opened an Apex bank account at Huntington National Bank (Huntington), and also used this

2

account to divert IHC funds. It is estimated that between March 2024 and May 2025, WISE diverted over $1,185,000.00 into his personally controlled bank accounts for his own use. WISE utilized electronic wire transfers during the orchestration of his scheme. WISE was the sole individual responsible for approving and authorizing Automated Clearing House (ACH) payments to IHC's vendors. WISE initiated and executed electronic wire payments from IHC's bank account, directing them to fictitious vendor entities that closely resembled legitimate IHC vendors by name. He disguised these fictitious entities as legitimate IHC vendor entities and arranged for the transmission of IHC funds into bank accounts that he personally owned and controlled. WISE accessed IHC's online banking institution portals to alter, falsify, or create vendor templates, thereby routing IHC vendor payments to his own bank accounts. In furtherance of the scheme, after IHC restricted WISE's permissions, WISE impersonated another IHC employee and used this employee's e-mail account to send an e-mail requesting a vendor payment to the same JPMC account WISE owned and controlled.

### *WISE CONFESSES TO EMBEZZLEMENT*

7.     In a voluntary discussion with IHC, WISE acknowledged his orchestration of this scheme, admitted to the embezzlement of IHC funds, and acknowledged his use of another IHC employee's e-mail account for continuing the scheme. Further,

investigation discovered that WISE diverted funds from IHC into another bank account held with Huntington in the name of Apex. WISE owned and controlled this Apex account. WISE organized and filed Apex with the State of Michigan in March of 2024, according to the State of Michigan Department of Licensing and Regulatory Affairs (LARA).

## **BACKGROUND**

8.      This investigation concerns wire fraud  and money laundering involving International Hardcoat, LLC (IHC). With the advent of the commercial hardcoating process, IHC started out in a small UPS bay in Detroit in 1962 to provide hardcoat and anodize services to the aerospace industry. As word spread about its capability, the business grew. Expanding into markets such as military, automotive, and cookware led to two more relocations and continued growth. Today, IHC operates one of the largest job shop anodizing plants in the country.[1] IHC operates multiple automatic and semi-automatic processing lines to finish parts for industries ranging from automotive, aerospace, military, nuclear, and firearms to food preparation, medical, and recreational. IHC's capabilities include hardcoat anodizing, sulfuric anodizing, chromate conversion coating, and other advanced surface treatments. IHC operates various facilities and employs

[1] https://IHCcorp.com

approximately 200 to 250 employees. One of IHC facilities is located in Detroit, Michigan.

9.     In its ordinary course of business, IHC issues numerous payments to vendors. Some of these payments are sent through electronic wire transfers.

10.    JPMorgan Chase Bank (JPMC), Premier Bank, WesBanco, and Comerica Bank are financial institutions as defined by 18 U.S.C. § 20 and maintained that status throughout all time periods relevant to this complaint. In 2025, WesBanco acquired Premier Bank.

## DEFENDANT

11.    WISE was a 28-year-old male with residences believed to be in Riverview and Taylor, Michigan. IHC hired WISE to be its Financial Controller in February 2024. As IHC's Financial Controller, WISE managed day-to-day accounting, and he was responsible for financial and accounting oversight.  Before Wise joined IHC in February 2024, WISE reportedly worked as an Assistant Controller at EDW. C. Levy Co. beginning in approximately April 2023. In approximately May 2025, prior to the discovery of WISE's fraud, IHC decided to replace WISE as its Controller and bring in an outside individual as his replacement. IHC structured an approximate one-month transition period with WISE and his replacement, an Accounting Lead, to ensure a proper and effective hand off of WISE's duties and

responsibilities. During the transition period, IHC discovered suspicions of WISE's fraudulent activity.

## **PROBABLE CAUSE**

12.     WISE served as IHC's Financial Controller from February 2024 until his employment was terminated on June 12, 2025. As IHC's Financial Controller, WISE managed the day-to-day accounting, including accounts payable and accounts receivables, and he was responsible for financial and accounting oversight. Through its ordinary course of business, IHC sends numerous payments to vendors. Prior to IHC's May 16, 2025 decision to separate its employment relationship with WISE as the Financial Controller, he was the sole individual responsible for approving and authorizing ACH payments to IHC's vendors. As Financial Controller, WISE was afforded a level of access and authorization that allowed him to confirm and process IHC's ACH vendor disbursements. WISE had access, credentials, and authorization to Premier Bank's (now WesBanco) online platform. WISE used this online banking platform to alter IHC vendor payment templates and change the destination bank account numbers. Specifically, as depicted in one instance below, WISE purportedly transmitted an $11,794.17 payment from IHC's Premier (now WesBanco) checking account to a legitimate IHC vendor, Insight Industrial. However, this purported Insight Industrial $11,794.17 payment was, in reality, remitted to a JPMC account WISE created, in

6

the name of EDW C LEVY HOLDINGS LLC (EDW) and WISE, ending in

account numbers -5692:

**Completed ACH Transactions**

| Account | Template Name | Request Type | Amount | Effective Date | Transmitted By | Transmit Date | Confirmation | Status |
|---------|---------------|--------------|--------|----------------|----------------|---------------|--------------|--------|
| *7838 - IHC LLC - CHECKING | Insight Industrial | CCD Payment | $11,794.17 | 12/31/2024 | JWISE | 12/31/2024 | 2631418557 | Processed |

 WesBanco

**Completed Transaction Details**

**Template Information**

| | |
|---|---|
| Template Name: | Insight Industrial |
| Request Type: | CCD Payment |
| Company Name/ID: | IHC LLC / 1381690288 |
| Template Description: | ACH |
| Debit Account: | *7838 - IHC LLC - CHECKING |
| Effective Date: | 12/31/2024 |
| Confirmation Number: | 2631418557 |
| Status: | Processed |

**Credit / Destination Accounts**

| ABA/TRC | Account | Account Type | Name | Detail ID | Amount |
|---------|---------|--------------|------|-----------|--------|
| 072000326 | *5692 | Checking | Chase Bank | | $11,794.17 |
| | | | | | Total:$11,794.17 |

**Approval History Information**

Approval Status : 1 of 1 received

| Action | User ID | Date |
|--------|---------|------|
| Enter Request | JWISE | 12/31/2024 01:23:57 PM (ET) |
| Approve/Transmit Request | JWISE | 12/31/2024 01:23:57 PM (ET) |

WISE utilized this scheme repeatedly. WISE disguised the IHC payment as

being disbursed to a legitimate vendor, Insight Industrial, but he altered the

recipient bank account to the JPMC -5692 account that he owned and controlled.

IHC confirmed with vendor Insight Industrial that Insight Industrial had not

requested this payment, its account did not end in -5692, and it had not received

these funds from IHC. Further, JPMC bank records show that the WISE controlled

-5692 account received this $11,794.17 payment, and the IHC Premier (now

WesBanco) account confirms the outgoing wire transfer as seen below:



| | November 30, 2024 through December 31, 2024 |
| --- | --- |
| | Account Number: █████5692 |

**How to Avoid the Monthly Service Fee (MSF)**
If you meet any of the following qualifying activities for this Chase Business Complete Checking$^{SM}$ account in a statement period, we will waive the $15 MSF.

Here's the business activity we used to determine if you qualified for the MSF waiver:
- $2,000 Minimum Daily Ending Balance: Your lowest daily ending balance was $4,601.09.
- $2,000 Chase Payment Solutions$^{SM}$ Activity: $0.00 was deposited into this account.
- $2,000 Chase Ink$^{®}$ Business Card Activity: $0.00 was your total Ink activity.

You can also avoid the MSF if you:
- Maintain a linked Chase Private Client Checking$^{SM}$ account OR
- Meet Chase Military Banking requirements

For complete details on all requirements to avoid the MSF, please review the Additional Banking Services and Fees for Business Accounts at chase.com/business/disclosures or visit a Chase branch.

### DEPOSITS AND ADDITIONS

| 12/31 | Orig CO Name:Ihc LLC         Orig ID:1381690288 Desc Date:241231 CO Entry Descr:ACH     Sec:CCD   Trace#:241270855250900 Eed:241231  Ind ID: Ind Name:Chase Bank 5670067838 Trn: 3665250900Tc | 11,794.17 |
| --- | --- | --- |

## Matching IHC Account Outgoing ACH Transaction:



P.O. Box 248 • Defiance, OH 43512
For inquiries, please call our Customer Care Center at 1-877-367-8178
YourPremierBank.com ▪ Telephone Banking: 1-888-511-1077

| Account Number | █████67838 |
| --- | --- |
| Page Number | 6 of 6 |
| Date | December 31, 2024 |

**Other Debits**

8

| 12-31 | PREAUTHORIZED WD<br>IHC LLC ACH<br>241231 1381690288 | -11,794.17 |

13.    IHC became unsatisfied with WISE's work performance and lack of

fundamental financial accountability. On or around May 16, 2025, IHC formally

notified WISE of the employment separation via letter. In part, the letter stated, "to

ensure a smooth transition and adequate training of the incoming Accounting Lead,

your employment will continue through June 13, 2025." On the same day as, or

the day before, the separation notification, IHC revoked WISE's permissions and

access to IHC's banking systems. WISE was made aware of this authority

revocation. Prior to this authority and access revocation, WISE had the authority to

initiate and approve ACH vendor payments.

14.    On or around May 19, 2025, IHC hired a new employee, an Accounting

Lead, tasked with inheriting WISE's job duties. IHC implemented new internal

controls that required the Accounting Lead to initiate ACH vendor payment

requests. These requests subsequently required approval from a separate IHC

representative. The newly hired employee was granted much of WISE's previous

access.

15.    Subsequent to WISE's notification of employment separation, IHC reviewed

and observed various discrepancies in WISE's financial reporting documents.

Among the discrepancies were payments disbursed to vendors that appeared to be

legitimate IHC vendors. However, payments to several of these distinct vendors were actually remitted to the same JPMC account ending in -5692. At the time of initial discovery, IHC promptly identified over $700,000.00 sent to this JPMC - 5692 account. This $700,000.00 grew as IHC discovered additional discrepancies.

### *IHC & WISE MEETING – June 12, 2025*

16.     Around June 12, 2025, WISE met with IHC representatives to discuss the payment discrepancies. The meeting was consensually audio-recorded. During this meeting with WISE, IHC representatives called a representative from an IHC vendor, Insight Industrial, to inquire about one of the payment discrepancies. Insight Industrial confirmed to IHC that Insight Industrial had not requested this particular payment, its account did not end in -5692, and it had not received these funds from IHC. During the discussion with the Insight Industrial representative, the representative informed IHC it had only issued one invoice and received one payment for approximately $11,000 on August 23, 2024. Other than that payment, Insight Industrial did not issue any invoices or receive other payments from IHC. WISE alleged that the payment discrepancies in question were reflective of his negligence, but the discrepancies were not reflective of intent to defraud.

### *IHC & WISE MEETING – June 16, 2025*

17.     Following the initial meeting, WISE requested to meet with IHC

representatives. On June 16, 2025, WISE met with IHC representatives to discuss the payment discrepancies a second time. The meeting was consensually audio recorded. WISE confirmed he created a JPMC -5692 bank account, that it was named EDW, and that he used the bank account to divert IHC funds into the account. WISE created the bank account prior to his IHC employment. WISE indicated he used this account for his own personal expenses. WISE indicated he had an addiction to buying cryptocurrency, and he repeated the cycle of purchasing cryptocurrency and losing money on these purchases.

18.     To divert IHC funds, WISE told IHC representatives that he logged into the Premier Bank (now WesBanco) account using his authorized IHC credentials. WISE modified the IHC vendor payment templates within the banking platform by listing legitimate IHC vendors, but WISE changed the vendor account numbers to reflect his own JPMC -5692 account. This diverted IHC disbursements into his JPMC -5692 account rather than into the disguised, legitimate IHC vendor accounts. WISE listed specific, legitimate vendors on the template but used vendors that IHC had not regularly used. WISE confirmed IHC received no legitimate invoices for the IHC payments disbursed to his JPMC -5692 account. WISE informed IHC he had embezzled over $700,000. WISE confirmed he used the funds for personal expenses and to purchase a vehicle in full.

19.     As previously noted, IHC revoked WISE's permissions and access to IHC's

11

banking systems, and WISE was made aware of this authority revocation. WISE was aware of the newly implemented internal controls that required the newly hired Accounting Lead to initiate vendor payments. During the second interview with IHC on June 16, 2025, IHC presented WISE with a physical copy of a June 10, 2025 e-mail that purported to be the Accounting Lead's request for vendor payment in the amount of $37,887.24. The vendor on this request was JCR Supply, but the remittance and destination account was the JPMC -5692 account that WISE owned.

20.    WISE confirmed that he impersonated his replacement, used his replacement's e-mail account to send a vendor payment request in accordance with the newly implemented internal controls, and disguised the vendor as a legitimate IHC vendor to disburse one additional payment into his JPMC -5692 account before his official June 13, 2025 separation. WISE acknowledged he knew he no longer had payment authorization permissions and used the Accounting Lead's email to bypass this restriction as a last effort to embezzle funds before his IHC departure.

21.    WISE agreed to voluntarily provide copies of his JPMC -5692 statements to IHC. Among those documents were documents showing WISE's EDW JPMC account ending in -5692.

### *EDW*

22.    State of Michigan Department of Licensing and Regulatory Affairs (LARA) records show EDW was organized by WISE on June 26, 2023. The articles of organization showed that the business purpose or activity was "Digital Photo & Video editing services. Photography services." The registered office and registered agent address shown was 211 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823. The name and address of the Initial Member was documented as Jacob Wise, 3800 Greenfield Road, PO Box 667, Dearborn, Michigan 48120-1206.

23.    It is important to note that EDW, organized by WISE on June 26, 2023, is not the same as a business named EDW. C. LEVY CO. EDW. C. LEVY CO. is a legitimate company in existence since around 1918 and headquartered in Dearborn, Michigan.[2] WISE reportedly previously worked for EDW. C. LEVY CO. as its Assistant Controller.

### *EDW JPMC Account -5692*

24.    Around June 18, 2025, WISE provided copies of his JPMC -5692 EDW bank account statements to IHC.

25.    Financial records received directly from JPMC confirmed WISE's EDW

---

[2] https://edwclevy.com

account ending in -5692 received multiple ACH payments from IHC. A sample of

ACH transactions from the JPMC -5692 April 2024 bank statement is depicted as

follows:

| Date | Description | Amount |
|------|-------------|--------|
| 04/03 | Orig CO Name: Ihc LLC | $4,185.23 |
| 04/18 | Orig CO Name: Ihc LLC | $33,187.20 |
| 04/23 | Orig CO Name: Ihc LLC | $29,432.21 |

26.    In addition to receiving multiple ACH payments, WISE's JPMC -5692

account received multiple unauthorized Zelle payments from IHC. WISE's March

2024 and April 2024 JPMC -5692 bank statements alone showed the following

Zelle payments sent from IHC to WISE's account, totaling over $30,000:

| 03/08 | Zelle Payment From Ihc LLC . Cmb01 Wkpqu5Y | 2,011.13 |
| 03/14 | Zelle Payment From Ihc LLC . Cmb01 Wqt507 G | 2,133.23 |
| 03/18 | Zelle Payment From Ihc LLC . Cmb01 Wuvu3E0 | 2,431.31 |
| 03/20 | Zelle Payment From Ihc LLC . Cmb01 Wwx8 Sk | 2,338.21 |
| 03/21 | Zelle Payment From Ihc LLC . Cmb01 Wxxni4D | 1,041.23 |
| 03/25 | Zelle Payment From Ihc LLC . Cmb01 Wyyel4P | 3,523.11 |

| 04/12 | Zelle Payment From Ihc LLC . Cmb0Ilcpvxb | 2,000.00 |
| 04/15 | Zelle Payment From Ihc LLC . Cmb0Ilmapk9 | 2,189.00 |
| 04/16 | Zelle Payment From Ihc LLC . Cmb0Ilml0P7W | 4,500.00 |

| 04/18 | Zelle Payment From Ihc LLC . Cmb0Ilpgltqn | 2,400.00 |
| 04/22 | Zelle Payment From Ihc LLC . Cmb0Ilt3Fnv | 2,480.00 |

| 04/23 | Zelle Payment From Ihc LLC . Cmb0Ilt40P8 | 4,800.00 |

## *Matching IHC Comerica Account Outgoing ACH Zelle Transactions:*

80072

ll.lll.l..l..l.l..l.l.l.l..l..l.l.l
IHC LLC
12400 BURT RD
DETROIT MI 48228

*Commercial Checking* **statement**

March 1, 2024 to March 31, 2024
**Account number** ████ 7449
**Previous account number** ████ 4180

*Commercial Checking* **statement**
March 1, 2024 to March 31, 2024

## Commercial Checking: ████ 7449

### Electronic withdrawals this statement period

| Date | Amount ($) | Activity | Customer | Bank |
|------|-----------|----------|----------|------|
| | | | **Reference numbers** | |
| Mar 08 | -2,011.13 | Zelle Edw C Levy Ho | | ZPD0002DT1 |
| Mar 14 | -2,133.23 | Zelle Edw C Levy Ho | | ZPD000BJF9 |
| Mar 18 | -2,431.31 | Zelle Edw C Levy Ho | | ZPD00084E1 |
| Mar 20 | -2,338.21 | Zelle Edw C Levy Ho | | ZPD000IQ69 |
| Mar 21 | -1,041.23 | Zelle Edw C Levy Ho | | ZPD00029F8 |
| Mar 22 | -3,523.11 | Zelle Edw C Levy Ho | | ZPD000GGZ8 |

80072

IHC LLC
12400 BURT RD
DETROIT MI 48228

*Commercial Checking* statement

April 1, 2024 to April 30, 2024
Account number ████ 7449
Previous account number ████ 4180

*Commercial Checking* statement
April 1, 2024 to April 30, 2024

## Commercial Checking: 1████ 7449

### Electronic withdrawals this statement period

| Date | Amount ($) | Activity | Reference numbers | |
|------|-----------|----------|-------------------|--|
| | | | Customer | Bank |
| Apr 12 | -2,000.00 | Zelle Edw C Levy Ho | | ZPD00030C9 |
| Apr 15 | -2,189.00 | Zelle Edw C Levy Ho | | ZPD0009W18 |
| Apr 16 | -4,500.00 | Zelle Edw C Levy Ho | | ZPD000A9D6 |
| Apr 22 | -2,480.00 | Zelle Edw C Levy Ho | | ZPD000AR21 |
| Apr 22 | -2,480.00 | Zelle Edw C Levy Ho | | ZPD000AR21 |
| Apr 22 | -4,800.00 | Zelle Edw C Levy Ho | | ZPD000ASQ8 |

27.    Around May 2, 2024, WISE transmitted an outgoing ACH payment from his JPMC -5692 account for approximately $49,917.98:

| | | |
|--|--|--|
| 05/02 | 05/02 Online ACH Payment 1 1130523180 To Ford (_########1430) | 49,917.98 |

28.    The JPMC -5692 statements showed numerous incoming ACH transactions from IHC. All ACH payments are routed and processed by the U.S. Federal Reserve or Clearing House Payments Company, a private business owned by 24 of

16

the world's largest commercial banks.[3]   The Clearing House's ACH payments

service, called Electronic Payments Network, is responsible for approximately half

of all U.S. commercial ACH payment volume. The U.S. Federal Reserve banks

handle the other half of ACH transactions. Because WISE made electronic

payments online from a location in Michigan, using an account at Premier Bank

(now WesBanco), headquartered in Ohio and West Virginia, respectively, to

JPMC, headquartered in New York, via the ACH system.

29.     There is probable cause to believe that WISE caused certain wirings, signs,

or signals to be transmitted by means of wire communication in interstate

commerce for the purpose of executing this scheme. Further, WISE made

electronic payments online from a location in Michigan, using an account at

Premier Bank (now WesBanco), headquartered in Ohio and West Virginia,

respectively, to Huntington, headquartered in Ohio, via the ACH system, there is

probable cause to believe that WISE caused certain wirings, signs, or signals to be

transmitted by means of wire communication in interstate commerce for the

purpose of executing this scheme.

30.     Based upon interviews with IHC staff and review of bank documents, I

know EDW is not an authorized IHC vendor. Moreover, there is not a legitimate

IHC vendor account ending in -5692. WISE was not authorized to disburse IHC

---

[3] https://www.forbes.com/advusor/banking/ach-payments/

funds to EDW or a JPMC account ending in -5692.

31.     Based upon my review of the JPMC provided statements associated with the JPMC -5692 account, and the JPMC statements provided by WISE, I believe that WISE used this JPMC -5692 account for transactions that were not authorized.

### APEX CAPITAL HOLDINGS LLC (Apex)

32.     State of Michigan Department of Licensing and Regulatory Affairs (LARA) records showed Apex was filed by WISE on March 19, 2024. The registered office and registered agent address shown was 211 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823. The name and address of the Initial Member was documented as Jacob WISE, 12400 Burt Road, Detroit, Michigan 48228. IHC's office is located at 12400 Burt Road, Detroit, Michigan, 48228.

### APEX CAPITAL HOLDINGS LLC HUNTINGTON ACCOUNT -7174

33.     Financial records received directly from The Huntington National Bank confirmed WISE's Apex account, ending in -7174, received multiple ACH payments from IHC. Records show WISE furnished his signature for the opening of the Huntington -7174 account as Apex's "Pres/Owner/CEO" on or around April 4, 2024. A sample of ACH transactions from the Huntington -7174 May 2024 and June 2024 bank statements is depicted as follows on the next page:

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



APEX CAPITAL HOLDINGS LLC
23131 MICHIGAN AVE PMB 1177
DEARBORN MI 48124-2020

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## *Huntington Unlimited Plus Checking*     *Account: -------7174*

| Statement Activity From:<br>05/01/24 to 05/31/24 | | | | |
|---|---|---|---|---|
| | | Beginning Balance | | $0.00 |
| | | Credits (+) | | 28,972.34 |
| Days in Statement Period | 31 |    Electronic Deposits | | 28,972.14 |
| | |    Interest Earned | | 0.20 |
| | | Debits (-) | | 23,089.01 |
| Average Ledger Balance* | 8,046.31 |    Regular Checks Paid | | 166.32 |
| Average Collected Balance* | 8,046.31 |    Electronic Withdrawals | | 18,108.78 |
| | |    Other Debits | | 4,813.91 |
| * The above balances correspond to the | | Total Service Charges (-) | | 0.00 |
| service charge cycle for this account. | | Ending Balance | | $5,883.33 |

*Average Percentage Yield Earned this period 0.029%*

## Other Credits (+)     *Account:-------7174*

| Date | Amount | Description |
|---|---|---|
| 05/15 | 24,222.14 | IHC LLC ACH  240515 |
| 05/29 | 2,500.00 | Zelle Transaction 202405291312 CMB0IMUL7PRH    Money Received from IHC LLC . Payment ID<br>CMB0IMUL7PRH |

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558

**Huntington**

APEX CAPITAL HOLDINGS LLC
23131 MICHIGAN AVE PMB 1177
DEARBORN MI 48124-2020

Have a Question or Concern?

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

*Huntington Unlimited Plus Checking*                              Account: ------7174

| | | |
|---|---|---|
| **Statement Activity From:** | Beginning Balance | $5,883.33 |
| 06/01/24 to 06/30/24 | Credits (+) | 27,334.10 |
| | Electronic Deposits | 27,035.87 |
| Days in Statement Period          30 | Interest Earned | 0.23 |
| | Other Credits | 298.00 |
| Average Ledger Balance*          9,257.94 | Debits (-) | 24,634.97 |
| Average Collected Balance*          9,257.94 | Electronic Withdrawals | 10,700.75 |
| * The above balances correspond to the | Other Debits | 13,934.22 |
| service charge cycle for this account. | Total Service Charges (-) | 4.50 |
| | Ending Balance | $8,577.96 |

*Average Percentage Yield Earned this period 0.030%*

**Other Credits (+)**                                             Account: ------7174

| Date | Amount | Description |
|---|---|---|
| 06/11 | 18,960.12 | IHC LLC ACH 240611 |

33.     As Financial Controller of IHC, WISE submitted and approved numerous

IHC payments, via ACH, to this Apex -7174 account. WISE submitted numerous

fraudulent payments under the disguised vendor name Servi Sure. IHC does have

legitimate business with Servi Sure, but Servi Sure's account number does not end

in -7174, nor does it bank with Huntington. IHC does not have a legitimate

business relationship with Apex, WISE's company that held the -7174 Huntington

bank account. As depicted below, WISE submitted and approved multiple

payments to Apex -7174 and altered the vendor name to Servi Sure in IHC's

internal system:



In addition to receiving multiple ACH payments, WISE's Apex -7174 account received multiple unauthorized Zelle payments from IHC. Below is one example of a Zelle payment sent from IHC to WISE's Apex -7174 account:



## THE CONCEALMENT

34.     WISE concealed IHC payment account destinations by creating financial reporting documents that disguised the receiving institution as legitimate IHC vendors. In actuality, the account bearing the account number ending in -5692 was not an IHC vendor account, but it was WISE's EDW JPMC account, controlled and owned by WISE. Similarly, the account bearing the Huntington account number -7174 was not an IHC vendor, but it was WISE's Apex Huntington account, controlled and owned by WISE. As IHC's Controller, WISE produced financial documents that masked the name of his personally controlled accounts. WISE inserted IHC vendor names, or those closely resembling IHC vendor names, utilizing the bank's online platform, into the vendor payment templates. WISE disguised the name of the accounts of IHC vendors, created the appearance of legitimate account activity, and created the appearance of legitimate vendor disbursements. WISE ensured he inputted his personally owned JPMC -5692 account and Huntington -7174 account as the purported vendor remittance accounts. He masked this and deceived IHC by including legitimate or near legitimate vendor names in the vendor templates to ensure he effectuated payment disbursements from IHC into his JPMC -5692 and Huntington -7174 accounts.

35.     Information provided by IHC indicates WISE remotely accessed his IHC workstation after IHC terminated him. WISE was not authorized to access the IHC

22

workstation after termination, and IHC believes WISE deleted or attempted to delete items from his IHC workstation.

36.     On the same day as, or the day before, the May 16, 2025 separation notification was made to WISE, IHC revoked certain permissions and access WISE had to IHC's banking systems. WISE was made aware of this authority and access reduction. Prior to this authority and access revocation, WISE had the authority to initiate and approve ACH vendor payments. WISE was aware of the newly implemented controls surrounding vendor payment requests and authorization. The new internal controls required the Accounting Lead to initiate ACH vendor payment requests. These requests subsequently required approval from a separate IHC representative. However, WISE still chose to impersonate the Accounting Lead by sending an e-mail from his replacement's e-mail account to send a vendor payment request, bypassing internal controls, and disguised the vendor as a legitimate IHC vendor to disburse one additional payment into his JPMC -5692 account before his official June 13, 2025 separation.

37.     On June 12, 2025, WISE's employment with IHC was terminated. After WISE was terminated, it was discovered that WISE gained unauthorized access to the IHC workstation by logging in remotely.

*LAUNDERING OF FRADULENTLY OBTAINED FUNDS*

38.    Further, the WISE controlled Apex -7174 account contained a withdrawal in the amount of $48,306.09 on or around October 3, 2024 that demonstrates money laundering. This transaction represents a significant monetary transaction, and it is believed that the criminally derived proceeds were utilized to procure a vehicle. Records obtained directly from Huntington and from Bill Brown Ford depict a Cashier's Check, dated October 3, 2024, payable to Bill Brown Ford. The captioned Cashier's Check is believed to be used for the purchase of a 2024 Ford F-150 from Bill Brown Ford. This purchase is indicative of a monetary transaction in an amount greater than $10,000, directly from the proceeds obtained from the aforementioned, illegitimately obtained funds. WISE sent funds illegitimately from IHC to his own Apex -7174 Huntington account on numerous occasions. After the funds were in WISE's Apex -7174 Huntington account, WISE utilized the $48,306.09 on or around October 3, 2024 to purchase the Ford F-150 from Bill Brown Ford.

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



APEX CAPITAL HOLDINGS LLC
23131 MICHIGAN AVE PMB 1177
DEARBORN MI 48124-2020

Have a Question or Concern?

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## Huntington Unlimited Plus Checking    Account: -------7174

| Statement Activity From: 10/01/24 to 10/31/24 | | Beginning Balance | $29,845.90 |
|---|---|---|---|
| | | Credits (+) | 64,167.08 |
| | | Electronic Deposits | 64,166.71 |
| Days in Statement Period | 31 | Interest Earned | 0.37 |
| | | Debits (-) | 85,269.12 |
| Average Ledger Balance* | 14,529.69 | Electronic Withdrawals | 29,568.14 |
| Average Collected Balance* | 14,400.66 | Other Debits | 55,700.98 |
| * The above balances correspond to the service charge cycle for this account. | | Total Service Charges (-) | 49.50 |
| | | Ending Balance | $8,694.36 |

*Average Percentage Yield Earned this period 0.030%*



## Other Debits (-)    Account:-------7174

| Date | Amount | Description |
|---|---|---|
| 10/01 | 47.88 | PURCHASE MYFICO.COM  MYFICO.COM BOZEMAN MT XXXXXXXXXXXX0296 |
| 10/01 | 70.98 | PURCHASE ADVANCE AUTO PARTS #17  ADVANCE AUTO PARTS #17 ALLEN PARK MI XXXXXXXXXXXX0296 |
| 10/01 | 15.00 | PURCHASE MAGICAL TOUCH CARWASH  MAGICAL TOUCH CARWASH ALLEN PARK MI XXXXXXXXXXXX0296 |
| 10/01 | 79.00 | PURCHASE COGORNO GOLF  COGORNO GOLF NAZARETH PA XXXXXXXXXXXX0296 |
| 10/02 | 99.00 | PURCHASE TOPSTEPTRADER LLC  TOPSTEPTRADER LLC CHICAGO IL XXXXXXXXXXXX0296 |
| 10/02 | 99.00 | PURCHASE TOPSTEPTRADER LLC  TOPSTEPTRADER LLC CHICAGO IL XXXXXXXXXXXX0296 |
| 10/02 | 99.00 | PURCHASE TOPSTEPTRADER LLC  TOPSTEPTRADER LLC CHICAGO IL XXXXXXXXXXXX0296 |
| 10/02 | 99.00 | PURCHASE TOPSTEPTRADER LLC  TOPSTEPTRADER LLC CHICAGO IL XXXXXXXXXXXX0296 |
| 10/02 | 99.00 | PURCHASE TOPSTEPTRADER LLC  TOPSTEPTRADER LLC CHICAGO IL XXXXXXXXXXXX0296 |
| 10/02 | 47.88 | PURCHASE MYFICO.COM  MYFICO.COM BOZEMAN MT XXXXXXXXXXXX0296 |
| 10/02 | 153.70 | PURCHASE DICKS SPORTING GOODS  DICKS SPORTING GOODS LIVONIA MI XXXXXXXXXXXX0296 |
| 10/02 | 2,000.00 | ADP WAGE PAY WAGE PAY  SD1700 9306350202730PLJ |
| 10/03 | 47.88 | PURCHASE MYFICO.COM  MYFICO.COM BOZEMAN MT XXXXXXXXXXXX0296 |
| 10/03 | 86.52 | PURCHASE KROGER #6 7000  KROGER #6 7000 TAYLOR MI XXXXXXXXXXXX0296 |
| 10/03 | 9.17 | PURCHASE SPEEDWAY 2194  SPEEDWAY 2194 TAYLOR MI XXXXXXXXXXXX0296 |
| 10/03 | 465.00 | PURCHASE BILL BROWN FOR  BILL BROWN FOR LIVONIA MI XXXXXXXXXXXX0296 |
| 10/03 | 48,306.09 | WITHDRAWAL |

**CHECKING, MONEY MARKET & SAVINGS WITHDRAWAL
(THIS IS NOT A CHECK)**

**Huntington**

*Oct. 3, 2024*

*fourty - eight thousand three hundred six 09/100*

$   48,306.09

0177053 7174

*Jacob Wise*

⑈631716⑈ ⑈598911766⑈

---

20241003009402104947

# 20241003009402104947

**CASHIER'S CHECK**
**The Huntington National Bank - Branch 612031**
**Columbus, Ohio 43219**

**Huntington**

No. 2 48121315

**Remitter**   APEX CAPITAL HOLDINGS LLC

Date   **10/03/2024**

**Pay**   Forty Eight **Thousand Three Hundred Six Dollars & 09/100**

$  ** 48,306.09 **

**To the Order Of**
**Bill Brown Ford**

Drawer   The Huntington National Bank
Columbus, Ohio 43219

DRAWEE   The Huntington National Bank
Columbus, Ohio 43214

By

Authorized Signer

COPY

**Michigan Department of State Application for Title and Registration Statement of Vehicle Sale**

CUST # 19238    DEAL # 3768

Purchase date 10/03/2024    Stock number 246610F    Delivery date 10/03/2024

Dealer: BILL BROWN FORD

Street address: 32222 PLYMOUTH RD

City: LIVONIA

State: MI    ZIP code: 48150    County: WAYNE

Dealer license number A010342    Sales tax license number 993060854    Phone number (734) 421-7000

Vehicle sold: ☒ New  ☐ Used  ☐ Demo    Trade-in ☒ Yes ☐ No

Trade-in year 2021    Trade-in make FORD TRUCK    Vehicle Identification Number (VIN) 1FTFW1ED7MFA89191

**Vehicle registration to transfer plate**
Expires 30 days after delivery date

Plate transferred from: Year _____ Make _____

Vehicle Identification Number (VIN): _____    Plate number: _____

**Vehicle history and title brand disclosure**
☐ Police vehicle       ☐ Vehicle has been flood damaged
☐ Municipal vehicle    ☐ Salvage title was previously issued
☐ Taxi                 N/A

**Odometer mileage disclosure**
The odometer mileage reading must match the mileage reading disclosed to the purchaser on the title or mileage statement.

| | | 8 | 5 | ☐ No tenths | ☒ Actual mileage | ☐ Exempt |
| | | | | | ☐ Not actual mileage | |

Remarks:

I have selected and agree to pay the optional $24 electronic filing fee → J.W. Customer initials

Used vehicle dealers only
Floor planned inventory lender:

Recreation Passport? ☐ Yes ☒ No    Purchaser or lessee's initials: J.W.

I certify this vehicle was delivered to the named purchaser or lessee on the delivery date indicated above, all information on this form is accurate and the vehicle is subject only to the secured interest listed on this form. I certify the dealership will apply for title and registration in the purchaser's name within 21 days of the delivery date, and that I have provided paper or electronic copies of all signed documents to the purchaser.

E-SIGNED by FRANCESCO SUCCURRO
on 2024-10-03 19:22:2 GMT

X _____
Signature of dealer's agent

FRANCESCO S SUCCURRO    FINANCE MANAGER
Printed name of dealer's agent    Title

---

Plate number: _____    Plate expiration date: Month _ Day _ Year _    Months: ☐ Title only ☒ New plate ☐ Renewal ☐ Transfer

| Year | Make | Body style | County of residence |
| 2024 | FORD | 4WD SUPERCRE | WAYNE |

Vehicle Identification Number: 1FT8W7LD4RFB64328    Base MSRP or empty weight: 73845.00    License plate fee: 5.00

Driver's License, ID, or FEIN number of all owners or lessees
1) _____    2) _____    Plate transfer fee: 10.00

3) _____    Title fee: 15.00

Complete names and address of all owners or lessor

APEX CAPITAL HOLDING LLC
7267 MORTENVIEW DR
TAYLOR MI 48180

Title late fee: $50 ($100 for 8 dealer floor planned vehicles): N/A

Complete names and address of all lessees    Sales tax: 4260.91

Total - transfer to line 5: 4290.91

Full rights to survivor: ☐ Yes ☒ No

Michigan No-Fault Insurance company    Policy or binder number

Secured interest:    Lien filing date: 10/03/2024

Street address:    Lien code ID:

City, state, ZIP:

| | |
| 1. Purchase price of vehicle (including freight & accessories) | 80841.18 |
| 2. Other taxable charges (documentary, service, temp reg fees, etc.) | 150.00 |
| 2a. Optional electronic $24 filing fee | 24.00 |
| 3. Trade-in sales tax credit | 10000.00 |
| 4. Total taxable price (line 1 + line 2 + line 2a - line 3) | 71015.18 |
| 5. Sales tax + plate fee + title fee (from form above) | 4290.91 |
| 6. Non-taxable charges (labor, service contract, etc.) | N/A |
| 7. Total delivered price (line 1 + line 2 + line 2a + line 4 + line 6) | 85306.09 |
| 8. Cash on deposit | N/A |
| 9. Cash due on delivery | $ 48306.09 |
| 10. Trade-in | $ 37000.00 |
| 11. Minus lien | $ N/A |
| 12. Total down payment | 37000.00 |
| 13. Unpaid balance to be financed | 85306.09 |
| 14. Insurance/additional product charge* | N/A |
| 15. Total amount of finance contract (line 13 + line 14) | N/A |

**Warning: This insurance is not PL/PD No-Fault insurance required by Michigan law.**
☐ Credit life insurance       ☐ Health & accident insurance
☐ Gap or waiver               ☐ N/A

BFS-4 temporary registration number (this number may be handwritten)

C

Printed name of salesperson

---

**Purchaser warning: Do not sign a blank form**

I am purchasing or leasing this vehicle and am applying for a Michigan certificate of title and registration or, if the lessee, applying for a registration. I certify that my driver's license is not suspended, revoked, or denied as a repeat offender and I am eligible to purchase or register this vehicle. I further certify that if a tax exemption is shown above it is valid.

E-SIGNED by INDRESS
on 2024-10-03 12 GMT

X _____ 10/03/24    X N/A _____    X N/A _____    N/A
Purchaser or lessor's signature   Date    Co-purchaser's signature   Date    Co-purchaser's signature   Date

X N/A    N/A    X N/A    N/A    X N/A    N/A
Lessee's signature   Date    Co-lessee's signature   Date    Co-lessee's signature   Date

DEALER

Note to purchasers: If you do not receive your vehicle title within 45 days, contact the Department of State Information Center at 888-767-6424.

## **CONCLUSION**

38.     As described above, WISE made numerous electronic funds transfers from
IHC to his JPMC -5692 and Huntington -7174 accounts for his own personal
benefit and enrichment. He also created false and fraudulent documents to conceal
payments to his EDW account. WISE's fraudulent documents concealed the
embezzlement of IHC funds and further concealed his use of IHC funds to pay for
personal expenditures. From IHC financial records obtained for the time period
March 2024 through May 2025, these unauthorized payments and embezzled funds
totaled over an approximate $1,185,000.00. The false documentation in the
financial reports WISE provided was devised or intended to devise a scheme or
artifice to defraud and was relied upon by IHC. This artifice to defraud created
financial harm to IHC.

39.     Based upon the above facts, there is probable cause to believe that WISE
executed a scheme to obtain money from IHC, based upon false and fraudulent
representations. In furtherance of, and to execute this scheme, WISE caused e-
mails and other writings, signs, signals, or pictures in interstate commerce by
means of wire communication, as set forth above.

40.     Therefore, your Affiant believes that probable cause exists in violation of

Title 18 U.S.C. § 1343 (wire fraud) and Title 18 U.S.C. §1957 (money laundering).


David Holliday
Special Agent
Federal Bureau of Investigation


Sworn to before me and signed in my
presence and/or by reliable electronic means.


Hon. Anthony P. Patti
United States Magistrate Judge
December 10, 2025

29